Gail L. SELLS, Administratrix
of the Estate of Gregory
K. Sells, Plaintiff,

v.

Michelle Irene WAMSER,
et al., Defendants.

No. C2–93–1062.

United States District Court,
S.D. Ohio,
Eastern Division.

Oct. 20, 1994.

John M. Snider, Stebelton, Aranda & Snider, LPA, Lancaster, OH, for Gail L. Sells.

James M. Wiles, Wiles, Doucher, Van Buren, & Boyle Co., LPA, Columbus, OH, for Michelle I. Wamser, Tollie Freightways, Inc.

## OPINION AND ORDER

KEMP, United States Magistrate Judge.

This is a wrongful death case arising from a collision between a vehicle driven by Gregory K. Sells, plaintiff's deceased, and a tractor trailer being operated by defendant Wamser and owned by defendant Tollie Freightways, Inc. On September 9, 1994, plaintiff filed a motion advising the Court that both parties had retained the same engineering firm, S.E.A., Inc., to serve as an expert witness in this case. In her motion, plaintiff asked the Court both to prohibit defendants from using any information gained from S.E.A., and to disqualify defendants' counsel. The Court held a hearing on the motion on October 6, 1994. At the conclusion of the hearing, the request to disqualify counsel was withdrawn. The following represents the Court's findings of fact, discussion, and order with respect to the balance of plaintiff's motion.

## I. THE BACKGROUND OF THE CONFLICT

The accident which gave rise to this lawsuit occurred on May 2, 1993 in Fairfield County, Ohio. Wamser was attempting to turn her tractor-trailer around on State Route 37, and the trailer was blocking both lanes of traffic. There were some efforts made to stop oncoming traffic while Wamser completed this maneuver. However, Sells, who was driving a 1985 Dodge Ram sport utility vehicle, was unable to stop his vehicle, and it collided with the tractor trailer somewhere near the back tires of the tractor. Sells was killed in the accident.

Within days, Sells' widow, Gail L. Sells, who is the plaintiff in this case, retained counsel, and counsel retained Dr. John Wiechel of S.E.A. to serve as an expert witness. Dr. Wiechel is a mechanical engineer with substantial experience in accident reconstruction. On Friday, May 7, 1993, five days after the accident, Dr. Wiechel travelled to Lancaster, Ohio, met with counsel, inspected the two vehicles which were involved in the accident, examined the scene of the collision, and took notes and pictures. He was paid a $500 retainer at that time. Subsequently, he has billed plaintiff for various services, has been paid in excess of $2600. Recently, he was asked to perform some type of reconstruction of the conditions which existed at the time of the accident, and, based upon that reconstruction, to testify as to his opinion of the discernibility of the tractor trailer rig on the night in question. He has not yet done that task.

Approximately a year after the accident, in anticipation of being required to identify an expert witness by September 30, 1994, as required by this Court's pretrial conference order, defendants, through counsel, approached Ricky Stansifer, who is also employed by S.E.A. Like Dr. Wiechel, Mr. Stansifer is a mechanical engineer, and his experience in performing accident reconstructions is similar to Dr. Wiechel's. As discussed below, he made efforts to verify that S.E.A. did not have a conflict of interest in this matter, and, believing the results of that search to be negative, proceeded to undertake certain tasks at the request of defense counsel.

It is important at this point to describe the process used by S.E.A. to determine if a conflict of interest exists. Generally, the engineer accepting employment in a particular matter is required to enter into a computer certain information concerning the accident, including the date, the scene of the accident, and the name of the party who proposes to retain SEA. Dr. Wiechel did so on this case, entering the correct date of the accident, the location as Route 37 in Fairfield County, and

the name of the client as Gail Sells. Mr. Stansifer did the same, using the correct date, the location of the accident as Lancaster, Ohio (which turned out to be incorrect), and the client name as Tollie Freightways. When this information was searched through the computer, a match was obtained based upon the date, but because the other information was different, Mr. Stansifer concluded that a different accident was being investigated by Dr. Wiechel. Without determining who was in the best position to avoid this type of mistake, it is clear that plaintiff played no role in it, and that everyone involved acted in good faith.

Mr. Stansifer was retained to perform a discernibility study based upon a reenactment of the accident. After reviewing the facts of the case and pictures of the scene, and determining the appropriate weather and visibility conditions, he arranged for a reenactment. He obtained a two-wheel drive Ford pickup as a substitute for Gregory Sells' vehicle, and although the pickup differed somewhat with respect to the spacing and the height of the headlights, he believed those variations were insignificant. He then obtained a tractor trailer rig from Tollie Freightways which was very similar to the one involved in the accident, and laid out a 500 foot course in 50 foot increments. He tested the visibility of the vehicle up to 500 feet. While doing the test, he obtained the assistance of law enforcement officials in keeping traffic from entering the test scene. He spent approximately twelve hours on this reenactment, including his travel time to Fairfield County, Ohio, daytime measurements of the course, the set-up of the vehicles, and photography. All of this work was performed before he and Dr. Wiechel discovered, purely by chance, that they were working on the same case. Dr. Wiechel and Mr. Stansifer have not discussed any of their substantive conclusions in this case, and have not shared information concerning their respective, independent investigations.

## II. THE SIGNIFICANCE OF THE CONFLICT

A substantial amount of time was spent at the hearing determining how either the plaintiff or the defendants would be affected by their inability to use S.E.A. if that firm were disqualified from representing one or both parties. The following discussion focuses on that issue.

### A. Dr. Wiechel

Dr. Wiechel has bachelor's, master's, and doctor's degrees in mechanical engineering, has worked with S.E.A. for 14 years, and has performed approximately 1,500 accident reconstructions. He has testified a number of times in court, including six to twelve times in nighttime visibility cases. Although he is a recognized expert in his field, there are a number of other persons both within the State of Ohio, and outside the State of Ohio, who have similar qualifications.

Dr. Wiechel has not yet performed an accident reconstruction or a discernibility study. He did, however, visit the site within five days of the accident, and observed the vehicles first-hand. In some types of cases, first-hand observations of this type are of benefit in formulating opinions and testifying as to the validity of those opinions. Photographs, which are necessarily two-dimensional, cannot capture certain features of the vehicles which are apparent upon first-hand observation. Additionally, certain details may be observed but not photographed. Thus, if there were a significant issue in this case concerning the manner in which the accident occurred, the angle of the impact, or the mechanics of the injury, first-hand observations might improve the accuracy of Dr. Wiechel's testimony by a factor of as much as 20 percent. Another expert who is limited to reviewing Dr. Wiechel's notes and photographs would not be able to provide testimony which could be enhanced by virtue of first-hand observations.

In this case, however, it appears that any enhancement of Dr. Wiechel's testimony concerning the issue of discernibility based upon his first-hand observations of the crash site of the vehicles is negligible. The location and angle of impact are not in dispute, nor is the fact that Gregory Sells died from injuries suffered in this accident. What will be at issue is whether a reasonable person under the same circumstances could have discerned

the tractor trailer across the road in sufficient time to stop. The type of discernibility study which leads one to conclusions on that issue can be performed just as well by someone who was not at the site shortly after the accident. Even though Dr. Wiechel may have noticed certain physical attributes of the site which he neither photographed nor noted, he testified that, when reenacting the accident, he would not rely upon his memory for such details, but rather would reconstruct the site based upon what was in his notes and photographs. Therefore, any benefit that plaintiff might enjoy from having had Dr. Wiechel at the accident scene shortly after the accident occurred is, under the facts of this case, a marginal benefit, and plaintiff would not be seriously prejudiced if required to retain another expert to perform a discernibility study.

### B. *Mr. Stansifer*

Like Dr. Wiechel, Mr. Stansifer is a mechanical engineer who has been with S.E.A. for almost 14 years and who has performed between 1,200 and 1,500 accident reconstructions. Again, however, there are numerous expert witnesses with his qualifications who could perform the same type of work which he performed in this case. Obviously, Mr. Stansifer did not visit the crash scene immediately after the accident.

As noted above, Mr. Stansifer has staged a reenactment of the accident. He testified that the type of weather conditions which he used for the reenactment could easily be duplicated by another engineer, since the time of night (11:00) can be duplicated at any time when there is total darkness, and the same moon and weather conditions will probably reoccur within the next month or two. Mr. Stansifer did not know whether the same tractor trailer used in his reenactment was still available, but he testified that the trailer was a very typical type of trailer used on the highways, and that the configuration of the tractor was not significant because the tractor was almost completely off the road, and the impact occurred primarily with the trailer. He also testified that the vehicle which he used, or a vehicle similar or identical to the one being driven by Gregory Sells, could

easily be obtained. Defendants offered no evidence that a similar, if not identical, reenactment could not be performed.

Mr. Stansifer took photographs and made notes concerning the reenactment. This work would not be transferable to another expert unless that expert also performed the reenactment. Mr. Stansifer's trial testimony would be based primarily upon his visual observations during the reenactment rather than upon the notes or photographs. Thus, for defendants to be in a comparable position, they would have to retain another expert to perform the same reenactment. S.E.A. would probably refund the money paid to it by either party under these circumstances if SEA is not allowed to continue as that party's expert.

### III. DISCUSSION

█ Perhaps fortunately, the situation which occurred in this case is not frequently seen by the courts. That being so, however, there is a paucity of case law analyzing the issues and directing the court's discretion toward a particular result. This Court has dealt with the issue in the past, and the conclusions reached in *Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271 (S.D.Ohio 1988) are helpful in defining the parameters of the problem. First, *Paul* establishes that the Court does have inherent power to disqualify an expert witness when a conflict of interest exists. *Paul*, 123 F.R.D. at 277–78. Second, *Paul* establishes that the overall guiding principle is to preserve the integrity of court proceedings, and that any remedy imposed in a case where an expert witness has a conflict of interest should promote fundamental fairness in the litigation process. *Id.* Beyond those general principles, *Paul* which involved a question of whether a professional fiduciary relationship ever arose between the plaintiff and the expert witness, is not overly helpful to the resolution of this case.

█ Here, one thing is clear: S.E.A. cannot be permitted to continue as an expert witness for both parties. It would be unseemly, at best, to permit representatives of the same engineering firm to testify on opposite sides of the case, and to expect those

persons to be objectively critical of each other's testimony. Further, S.E.A. wisely has a policy against doing work for different sides of litigation unless the parties expressly consent. The parties do not consent. Thus, the Court is faced with three possible remedies: disqualification of S.E.A. altogether, disqualification of Dr. Wiechel, or disqualification of Mr. Stansifer.

One way to choose among those three remedies is to focus on the relative advantages and disadvantages to the parties that each remedy would pose. Here, however, that factor carries little weight. The Court perceives no prejudice to defendants if Mr. Stansifer is disqualified, since defendants can simply hire another, equally qualified witness to perform the same reconstruction, and the cost of Mr. Stansifer's work will be reimbursed. Similarly, because Dr. Wiechel has not yet performed such a reconstruction, plaintiffs can simply hire someone else with his qualifications to do that work. Moreover, to the extent that any of the work done by Dr. Wiechel to date would assist in performing that reconstruction, Dr. Wiechel's notes and photographs would be available. Given the Court's conclusion that there is no significant advantage to the plaintiff in having Dr. Wiechel as her expert simply because he visited the crash scene and viewed the vehicles shortly after the accident occurred, plaintiff would not be disadvantaged if he were disqualified.

*Paul* also indicates that one of the Court's concerns in an expert witness conflict of interest situation is whether privileged attorney-client communications have been disclosed to the expert in such a way that the expert's contact with the opposing party has created a risk of improper disclosure of such communications. If there were evidence that attorney-client communications from the adverse party had materially affected either Dr. Wiechel's or Mr. Stansifer's ability to testify, that could form a basis for disqualifying one or both of them. In this case, however, it is clear that there has been no sharing of information, so this factor does not suggest which remedy to choose. Essentially, any of the three available remedies is equally viable from the standpoint of preju-

dice, or lack of prejudice, to the parties, and from the standpoint of protecting the confidentiality of attorney-client communications.

That being the case, the Court must find some other rational rule for decision which will produce a fundamentally fair result. In this case, the Court believes the applicable rule is the following. In the absence of any advantage or disadvantage to either party, and in the absence of any unwarranted disclosure of any privileged or confidential information, the Court should endeavor to place the parties in precisely the position they would have been had the conflict of interest not occurred. To go beyond that, and to alter the situation when there is no sound basis for doing so, would be to allow the development of the conflict of interest to skew the ordinary progression of the case.

If the conflict had not occurred, the following situation would exist. Dr. Wiechel would be plaintiff's expert, and defendants, upon learning at the outset Mr. Stansifer would be unable to be their expert because of Dr. Wiechel's involvement in the case, would have retained someone else to perform the discernibility study. Assuming that defendants will be reimbursed for the money which they have paid to S.E.A., the Court can recreate that situation simply by disqualifying Mr. Stansifer. There is no need to disqualify Dr. Wiechel, because his testimony will not be affected by the fact that Mr. Stansifer performed an accident reconstruction. To disqualify Dr. Wiechel under these circumstances would be to place the parties in a different position than they would have been had the conflict not occurred. Given the fact that there is no apparent reason for doing that, the Court is confident that disqualification of Mr. Stansifer will remedy the problem, will not prejudice either of the parties, and will place them in the precise position they would have been had this situation been properly identified and avoided at the time defendants attempted to hire Mr. Stansifer.

Obviously, requiring defendants to retain a new expert will require a revision of the pretrial schedule. The Court will grant defendants whatever time they reasonably need to retain a new expert witness and to re-per-

form the discernibility test. Additionally, if Dr. Wiechel is going to perform such a test, he should do it promptly, because under the Court's pretrial order the plaintiff is required to disclose both the identity of her expert witness and a complete statement of his opinions in advance of reciprocal disclosure of that information from the defendants. Consequently, after receipt of this order, the parties shall confer to determine an appropriate schedule which will permit these expert witness studies to be made, and shall then advise the Court of how much additional time is necessary. The parties should endeavor, however, to have all discovery complete, and the case ready for trial, not later than six months from the date of this order.

## IV.  CONCLUSION

Based upon the foregoing discussion, plaintiff's motion of September 9, 1994, is granted to the extent that it requests disqualification of S.E.A., Inc. as an expert witness for the defendants. If defendants wish to use an expert witness in this case, they shall retain an expert who is not affiliated with S.E.A., Inc. The parties shall promptly confer with respect to a new schedule for the identification of expert witnesses and completion of all discovery, and submit a proposed order to the Court which allows all discovery to be completed, and the case to be ready for trial, within six months.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. § 636(b)(1)(A), Rule 72(a), Fed.R.Civ.P.; Eastern Division Order No. 91–3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D.Ohio L.R. 72.4.